FARRIS, Circuit Judge:
Equitable Life Assurance held a first mortgage interest in property owned by Sun Valley Ranches, Inc. Sun Valley has sought to reorganize under Chapter 11 of the bankruptcy code. Sun Valley appeals from two orders of the district court in the bankruptcy action. One order lifted the automatic stay in bankruptcy, permitting Equitable Life Assurance to go ahead with foreclosure and sale of Sun Valley’s property. The second order denied Sun Valley’s motion to stay the lifting of the automatic stay pending appeal. The day after the second motion was entered, the sale was held and Equitable purchased the property.
BACKGROUND
Sun Valley Ranches, debtor in this bankruptcy action, is an Idaho corporation operating a large farm in Camas County, Idaho. Until the mid-1970s, Sun Valley operated as a dry farm. In 1978, Sun Valley borrowed $1,250,000 from Equitable to purchase and install irrigation equipment. This loan was secured by a first mortgage interest on the farm property.
Sun Valley defaulted on its loan to Equitable in April 1983, and has paid nothing on the debt in the four years since. Sun Valley first sought to reorganize under Chapter 11 in May 1983. That petition was dismissed in May 1985. Equitable sought to foreclose on the property. On March 26, 1986, the district court entered a judgment and decree of foreclosure.
Sun Valley filed the present petition under Chapter 11 on May 9, 1986. The sale, scheduled for June 13, was therefore automatically stayed under 11 U.S.C. § 362(a). On May 27, 1986, Equitable moved under § 362(d) to lift the automatic stay. On June 12, the magistrate entered an order lifting the stay retroactive to May 9. The district court stayed the magistrate’s order until Sun Valley could appeal. On September 18, 1986, the district court ruled that lifting the stay was justified because the debtor had made no showing that it could successfully reorganize, that it had admitted it had no equity in the property, and that Equitable was not protected against the declining value of the property. In making its ruling, the district court ordered the stay lifted immediately.
Sun Valley moved to stay this decision of the district court pending appeal, but the court denied the motion, saying that the bond Sun Valley proposed was too small. The court authorized a marshal’s sale on October 24. A motions panel of the Court of Appeals denied Sun Valley’s emergency motion to stay the order authorizing the sale. Sun Valley asked the district court for a temporary restraining order on October 23, which the court denied. The sale went ahead on October 24, and Equitable purchased the property for the full amount of the debt and costs, subject to Sun Valley’s statutory rights of redemption. This appeal followed.
DISCUSSION
1. Mootness
Equitable argues that this case is moot because the foreclosure sale has occurred and the court can therefore offer no effective relief. We have generally held that where an automatic stay is lifted, the debtor’s failure to obtain a stay pending appeal renders an appeal moot after assets in which the creditor had an interest are sold. See, e.g., Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1423-24 (9th Cir.1985) (stock sold as per a foreclosure sale stipulated by contract); In re Suchy, 786 F.2d 900, 902 (9th Cir.1985) (house sold as per a foreclosure sale stipulated by contract); In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir.1981) (real property sold to third party); In re Royal Properties, Inc., 621 F.2d 984, 986 (9th Cir.1980) (same); In re Combined Metals Reduction *1375 Co., 557 F.2d 179, 187-90 (9th Cir.1977) (same).
We have, however, carved out a narrow exception to this rule, where real property is sold to a creditor who is a party to the appeal. Matter of Springpark Associates, 623 F.2d 1377 (9th Cir.), cert. denied, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); see also Matter of Cada Investments, Inc., 664 F.2d 1158, 1160 (9th Cir. 1981) (“[I]n contrast to other cases in which we have addressed comparable mootness problems, all essential parties are before the court.”). In Springpark we held that a debtor’s failure to obtain a stay from the lifting of the automatic stay, followed by the sale of debtor’s property, did not moot the debtor’s subsequent appeal because the creditor-purchaser was before the court. Springpark, 623 F.2d at 1379 (distinguishing In re Royal Properties, 621 F.2d 984, where the purchaser was a third party). In such a case, we said in Springpark, “it would not be impossible for the Court to fashion some sort of relief.” Id.
This exception to the rule is especially appropriate here, where the foreclosure sale is subject to statutory rights of redemption. Where the assets sold were shares of stock, we said that “the fact that the purchaser is a party to [an] appeal does not change the applicability of the mootness rule.” Algeran, 759 F.2d at 1424. But the existence of statutory rights of redemption indicates a difference between the sale of stock and the sale of real property. Based on equitable principles, redemption has long provided a means for reversing sales of real property. Where, as here, the creditor-purchaser is before the court, the court could exercise similar equitable principles and reverse the sale. We decline to follow the Eleventh Circuit’s contrary position. See In re Matos, 790 F.2d 864, 866 (11th Cir.1986); In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294, 1296 (11th Cir.1984). Sun Valley’s appeal is therefore not moot.
2. Giving Immediate Effect to the Court’s Order
On September 18, 1986, when the district court upheld the magistrate’s lifting of the automatic stay, it did not stay its order for ten days as permitted under Bankruptcy Rule 8017(a): “Judgments of the district court ... are stayed until the expiration of 10 days after entry, unless otherwise ordered by the district court _” (emphasis added). During what would otherwise have been the ten-day stay of the district court’s order, Equitable obtained a writ of execution for a foreclosure sale, an action that Sun Valley contends should have been void. Because the Rule by its terms gives the district court discretion to make its order effective immediately, the Court of Appeals will review this matter for abuse of discretion if Rule 8017(a) applies.
Equitable argues that not Rule 8017(a), but Bankruptcy Rule 7062 applies to this situation. Rule 7062 creates an explicit exception to Fed.R.Civ.P. 62(a), which requires that a district court’s judgment not be enforced for ten days after its entry. Rule 7062 provides that the automatic stay provisions of Rule 62(a) apply in “adversary proceedings, except that an order granting relief from an automatic stay provided by § 362 ... shall be [an] additional exception[ ] to Rule 62(a).” (Emphasis added.) This gives a court discretion to give immediate effect to the lifting of an automatic stay.
Whether Rule 8017 or Rule 7062 applies, Sun Valley contends that the court’s action was an abuse of discretion because it gave inadequate reasons for making the order effective immediately. The policy behind the automatic stay provision is to give debtors a “breathing spell.” Because this policy is so important, Sun Valley argues, the court needed to give more reasons for making its order effective immediately. Equitable argues that the district court’s reasons for lifting the stay are also reasons for lifting it immediately. Those reasons, especially the declining value of the mortgaged property, are adequate to support the district court’s decision to make its order effective immediately. The court did not abuse its discretion.
*1376 3. Lifting the Automatic Stay
We review the district court’s order lifting the automatic stay under the provisions of Rule 8013 of the Federal Rules of Bankruptcy. The court’s findings of fact are reviewed for clear error; its conclusions of law are reviewed de novo. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986).
A creditor may seek relief from the automatic stay provisions of § 362 if there is inadequate protection of its interest in collateral, or, where the collateral is real property, if the debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d). Although the district court found that both these statutory provisions justified granting relief to Equitable, the provisions are disjunctive. Nazareth National Bank v. Trina-Dee, Inc., 731 F.2d 170, 171 (3d Cir.1984). We may therefore affirm even if we find that only one of the two provisions justified lifting the stay. The burden of proof on these matters lies with the debtor, except for the issue of whether the debtor has any equity in property. See In re Greiman, 45 B.R. 574, 579 (Bankr. Iowa 1984); In re Gauvin 24 B.R. 578, 580 (Bankr.Cal.1982).
The court based its ruling chiefly on section 362(d)(2). Both parties agree that Sun Valley had no equity in the property, so the first requirement of this provision is met. Sun Valley contends, however, that the court clearly erred in determining that the farm property was not necessary for an effective reorganization. The basis for its determination was its finding that no reorganization was possible. See In re Development, Inc., 36 B.R. 998, 1005 (Bankr. Haw.1984) (focusing on whether there is “a reasonable possibility of a successful reorganization within a reasonable time”); La-Jolla Mortgage Fund v. Rancho El Cajon Associates, 18 B.R. 283, 291 (Bankr.Cal.1982); see also B. Weintraub & A. Resnick, Bankruptcy Law Manual 118.10 at 8-20 (“[Pjroperty is not necessary to an effective reorganization if there is no reasonable possibility that a successful reorganization of the debtor can be achieved.”).
Sun Valley and Equitable understandably disagree on whether there was a reasonable possibility for Sun Valley to reorganize. The facts relied upon by the district court were Sun Valley’s steady losses and the declining value of the property. Sun Valley had been unable to pay Equitable either interest or principal on its loan for four years. Sun Valley’s disclosure statement indicates that it planned to pay out more than $97,000 each year under its proposed reorganization plan. The statement also indicates that it would have only $86,000 available per year for distribution. The district court reasonably concluded from this “deficit spending” that no reorganization was possible. Sun Valley argues that the district court misunderstood these figures, but it cited no other figures in the disclosure statement or elsewhere in the record to rebut the conclusion that the proposed reorganization plan was unworkable.
The court also ruled that Sun Valley had not shown that Equitable’s interest in the mortgaged property was adequately protected, entitling Equitable to relief under the terms of section 362(d)(1) as well. The factual bases for the court’s ruling were Sun Valley’s inability to make any payments to Equitable for four years and the declining value of the farm property that secured Equitable’s loan. Equitable asserts that the farm property was appraised as an irrigated farm at $2.6 million in November 1983 and at $1.6 million in June 1986. Sun Valley apparently did not rebut these assertions, but valued the property as a dry farm at $581,168.32. It was not clearly erroneous for the district court to have concluded from these figures that the property was declining in value and that Equitable’s interest was not protected.
AFFIRMED.