In re KINGS INN, LTD., a limited partnership, Debtor.

In re C.F.S., INC., a Nevada corporation, Debtor.

In re B.C.I. OF NEVADA, INC., a Nevada corporation, Debtor.

In re C.M.F.C. OF NEVADA, INC., a Nevada corporation, Debtor.

In re KINGS INN CASINO, LTD., Debtor.

Gaylord E. PRICHARD, Appellant,

v.

SHERWOOD & ROBERTS, INC., a Washington corporation, et al., Appellees.

BAP No. NV–82–1240 VASE.
Bankruptcy Nos. 81–00518 to 81–00521 and 82–00323.
Adv. Nos. 81–138 through 81–141.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

March 7, 1984.

Stephen R. Harris, Stephen R. Harris, Ltd., Reno, Nev., for appellant.

Larry D. Lessly, Henderson, Nelson & Moschetti, Reno, Nev., Michael D. Koomer, Pacht, Ross, Warne, Bernard & Sears, Inc., Los Angeles, Cal., J. Douglas Clark, Reno, Nev., for appellee.

Before VOLINN, ASHLAND and ELLIOTT, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

### I. FACTS

#### A. Background of Kings Inn

This appeal and the underlying bankruptcy cases have evolved out of an attempt by various individuals and entities to construct and operate a casino, hotel and restaurant, known as the King's Inn in Reno, Nevada. Kings Inn, Ltd., a limited partnership consisting of Matthew E. Chotas, Joseph Fischer and Otis K. Scoggin, as limited partners, and C.F.S., Inc., as general partner, was formed on September 1, 1973 to build the Kings Inn. On September 28, 1973, Kings Inn, Ltd., entered into a lease agreement with Kings Inn Casino Investors, Ltd., to provide the casino, food and beverage operations for the Kings Inn. The leasehold interest of Kings Inn Casino Investors, Ltd., was later assigned to Kings Inn Casino, Ltd. By agreement dated December 21, 1973, Kings Inn, Ltd., by its partners, transferred to appellant, Gaylord E. Prichard, a 25% interest in Kings Inn, Ltd., and 1% of the casino's gross operating revenue (1% casino override). Chotas, Fischer and Scoggin thereafter executed an option agreement granting to James Mallen, as trustee for a Nevada corporation to be created, the option to purchase most of their remaining limited partnership interests in Kings Inn, Ltd., and their shares of stock in the general partner, C.F.S., Inc. Appellant Prichard executed a waiver and consent to the terms of this option agreement.

In December, 1974, appellant executed and recorded an affidavit-declaration of interest, stating that he had acquired a 25% interest in Kings Inn, Ltd.

On April 4, 1975, the option agreement was amended whereby G.M.F.C. of Nevada, Inc. and B.C.I. of Nevada, Inc., were granted essentially the same rights previously held by James Mallen, as trustee. Allan Bergendahl and various members of his family were principals of G.M.F.C. of Nevada, Inc. and B.C.I. of Nevada, Inc., or related entities.

On August 5, 1975, C.F.S., Inc. and B.C.I. of Nevada, Inc., as general partners, and Prichard, Chotas, Fischer and Scoggin, as limited partners, executed and later filed an Amended Certificate of Limited Partnership of Kings Inn, Ltd. This Amended Certificate states that C.F.S., Inc., and B.C.I. of Nevada, Inc., each owned a 30% interest as general partners in Kings Inn, Ltd.; and that appellant, Prichard, owned a 25% interest and that Chotas, Scoggin and Fischer each owned 5% interests as limited partners in Kings Inn, Ltd.

On April 28, 1980, a Nevada state court, in an action involving the appellant and

various individuals and entities with interests in the Kings Inn, found that appellant owned a 25% interest as a limited partner in Kings Inn, Ltd., and a 1% casino override.

On July 23, 1980, appellant again executed and recorded an affidavit-declaration of interest stating that he owned a 25% interest in Kings Inn, Ltd., which included a 25% interest in the real property and other assets of the limited partnership.

Pursuant to the original plans for development of the Kings Inn, negotiations were conducted with Sherwood & Roberts, Inc., resulting in a construction loan secured by a deed of trust which was recorded on January 28, 1974. The signators of the deed of trust were Kings Inn, Ltd., by Scoggin as president of C.F.S., Inc., general partner; and Kings Inn Investors, Ltd., by H.M. Spivock, as president of Mountain Lake, Inc., general partner. Later, Sherwood & Roberts provided permanent financing of the costs of construction secured by a deed of trust which was recorded on December 31, 1975. The signators on this deed of trust were Kings Inn, Ltd., by Allan Bergendahl as president of C.F.S., Inc., and as president of B.C.I. of Nevada, Inc., general partners; and Kings Inn Casino, Ltd., by Allan Bergendahl as president of G.M.F.C. of Nevada, Inc., and as president of B.C.I. of Nevada, Inc., general partners.

The promissory note for permanent financing, secured by the latter deed of trust, went into default and Sherwood & Roberts commenced foreclosure. On June 16, 1981, the eve of the foreclosure sale, Kings Inn, Ltd., C.F.S., Inc., B.C.I. of Nevada, Inc., and G.M.F.C. of Nevada, Inc., filed voluntary bankruptcy petitions under 11 U.S.C. Chapter 11.

### B. Bankruptcy Proceedings

On August 12, 1981, Sherwood & Roberts commenced adversary proceedings to lift the automatic stay of 11 U.S.C. § 362 with respect to G.M.F.C. of Nevada, Inc., B.C.I. of Nevada, Inc., C.F.S., Inc., and Kings Inn, Ltd., for the purpose of foreclosing on its security in the Kings Inn. On March 31, 1982, the appellant filed a motion to intervene. An order denying the appellant's motion to intervene was entered on April 12, 1982. On April 30, 1982, a hearing was held regarding lifting the automatic stay. On that date, the bankruptcy court entered an order on the docket sheet of each adversary proceeding lifting the automatic stay and allowing Sherwood & Roberts to proceed with their foreclosure scheduled for May 28, 1982.

During the April 30, 1982, hearing the bankruptcy court stated that the order lifting the stay was subject to the right of any of the parties to request that it be reinstated or otherwise enter an order of confirmation of a plan.

A substantial portion of the hearing on April 30, 1982, consisted of a colloquy between counsel for the various parties, including the appellant, and the court, regarding the importance of determining appellant's interest in the specific assets of the Kings Inn. The court set May 19, 1982 for a hearing on appellant's interest in the Kings Inn.

A hearing was held on May 19, 1982. Appellant objected to the hearing contending that he was denied due process as a result of the failure of the court to define the issues to be decided at the hearing and the failure of the court to give appellant sufficient time to complete discovery.

Nevertheless, the court required that the hearing proceed. On May 21, 1982, the court entered Findings of Fact and Conclusions of Law and an Order. The court concluded that appellant, as a limited partner, had only a personal property interest in Kings Inn, Ltd., but no interest in specific assets, including real property of the Kings Inn; that the general partners of Kings Inn, Ltd., had the authority to execute deeds of trust and other security agreements in favor of Sherwood & Roberts and that the appellant was estopped from contesting such authority; that the 1% casino override interest of the appellant did not affect legal title to the real property of the Kings Inn, but was a contractual obligation personal to Kings Inn Casino, Ltd.; and that the deed of trust and other security

held by Sherwood & Roberts "constitute a valid existing security interest of Sherwood & Roberts, Inc., in and to the real and personal property encumbered thereby . . ." superior to the interests of appellant.

The order provides:

1. Appellant has a 25% limited partnership interest in Kings Inn, Ltd.;

2. Appellant has no interest in the real property or appurtenances of the Kings Inn;

3. Appellant's 1% casino override does not affect the legal title of property of the Kings Inn;

4. That the documents which appellant executed and recorded with respect to his interest in the Kings Inn property were deemed stricken from the record.

On May 28, 1982, the appellant moved the court to alter or amend its Findings and Conclusions. The court's response to the motion was a letter of that same date which did not alter or amend the order.

It should be noted that appellant had not availed itself of the opportunity extended by the court on April 30, 1982 for the parties to request that the 11 U.S.C. § 362 stay be reinstated or that an order be entered confirming a plan.

The foreclosure sale therefore took place as set on May 28, 1982. The property was purchased by "the Bergendahl family". Sherwood & Roberts state that the obligation due and owing to it was satisfied at that time. This fact is uncontroverted.

On June 4, 1982, the appellant filed a notice of appeal to this Panel of the May 21, 1982 holding that Prichard had no intrinsic interest in the real or personal property of Kings Inn, Ltd.

■ We are somewhat troubled by the extraordinary informality of the proceedings below. After denying Prichard's motion to intervene in the adversary proceeding brought by Sherwood & Roberts for relief of stay, the court proceeded to hold hearings and adjudicate the interest of Prichard, a non-party. However, the trial court's conclusion was clearly correct. The owner of a limited partnership interest in a partnership that owns real property has no separate or special interest in the real property and no standing to contest a relief of stay action brought by a creditor seeking to foreclose a lien on the real property.

## II. MOOTNESS

The appellee debtors and Sherwood & Roberts, *inter alia,* contend that this appeal is moot under former Bankruptcy Rule 805, applicable at the time in question, because appellant did not request a stay of the sale pending appeal.

Appellant asserts that Bankruptcy Rule 805 is inapplicable because Allan Bergendahl (and apparently his family) purchased the Kings Inn with knowledge of appellant's claims to the property, and, therefore, Bergendahl cannot be a good faith purchaser as required by Bankruptcy Rule 805.

Appellant is appealing an order of the bankruptcy court which provides that he has no interest in the real property and appurtenances of the Kings Inn, his interest being limited to a 25% limited partnership interest in Kings Inn, Ltd., and a 1% casino override interest in the gaming revenue of Kings Inn Casino, Ltd.

The real property and appurtenances referred to in the order were apparently sold to the Bergendahl family at a foreclosure sale. Bankruptcy Rule 805 provides in part:

". . . Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal."

■ While the language of Bankruptcy Rule 805 deals with orders approving sales of property, it has been applied to moot appeals where effective relief has been precluded by a sale of the debtor's property. *In re Robert's Farms, Inc.,* 652 F.2d 793 (9th

Cir.1981); *In re Bel Aire Associates, Ltd.,* 706 F.2d 301 (10th Cir.1983). The order on appeal declares that the appellant has no property right in specific real or personal property in the Kings Inn and that Sherwood & Roberts has a valid security interest in the Kings Inn property. Therefore, it would appear that appellant's failure to obtain a stay pending appeal from the bankruptcy court or this Panel, precludes the Panel from overturning the sale and reinstating any claimed interest which he has in the Kings Inn property, should he prevail on appeal.

Any decision which the Panel might make on the merits of the controversy between appellant and appellees would appear to be moot unless the purchaser, Bergendahl family, is not a good faith purchaser of the property. *In re Exennium,* 715 F.2d 1401 (9th Cir.1983); *Robert's Farms, supra; Greylock Glen Corporation v. Community Savings Bank,* 656 F.2d 1 (1st Cir.1981); *In re Rock Industries Machinery Corporation,* 572 F.2d 1195 (7th Cir.1978); *Bel Aire Associates, supra.* Since Bankruptcy Rule 805 and the accompanying committee notes do not define "good faith purchaser", the courts have consistently used the traditional equitable definition of "good faith purchaser" as one who buys the property in "good faith" and for "value". *Bel Aire Associates, supra.* Appellant did not contest below and does not contest here that the Bergendahl family did not pay "value" for the Kings Inn.

Appellant does contend that the Bergendahl family is not a "good faith purchaser" of the property. Appellant contends that the Bergendahl family's control of various entities involved in this case and their knowledge and involvement in events which led up to this case, preclude them from meeting the test of "good faith".

The test of "good faith" has not been interpreted as the appellant argues. "Lack of good faith is generally determined by fraudulent conduct during the sale proceedings." *In re Exennium, supra. See also, Bel Aire Associates, supra; Rock Industries, supra,* ("The requirement that a purchaser act in good faith, of course, speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *Greylock Glen, supra.*

■ Any knowledge of the Bergendahl family as to claims of appellant through knowledge of the pendency of appeal is expressly made irrelevant to the determination of "good faith purchaser" by the terms of Bankruptcy Rule 805.

Appellant has not asserted such existence of any irregularity in the sale process as would make the Bergendahl family other than "good faith purchasers". Appellant requests that the issue of "good faith purchaser" be remanded to the bankruptcy court for an evidentiary hearing. Based on the foregoing, we do not believe that a remand is appropriate.

In addition, neither the Bergendahl family nor the members thereof have been made parties to this appeal. Since they have not been made parties, the appellant cannot be given any relief which would affect them. *In re Royal Properties,* 621 F.2d 984 (9th Cir.1980).

The appeal is DISMISSED as moot.